UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

FABIAN GOMEZ,

    Petitioner,

    v.                                      CAUSE NO.: 3:19-CV-196-JD-MGG

WARDEN,

    Respondent.

OPINION AND ORDER

Fabian Gomez, a prisoner without a lawyer, filed a habeas corpus petition challenging a prison disciplinary proceeding at Miami Correctional Facility (MCF 18-10-0717) in which a disciplinary hearing officer found him guilty of possessing a cell phone in violation of Indiana Department of Correction ("IDOC") Offense A-121.[1] (ECF 1.) He lost 100 days of earned-time credits, among other sanctions. (ECF 7-11.)

The charge was initiated on October 30, 2018, when Officer H. Winegardner wrote a conduct report stating as follows:

> I, Officer Winegardner, was conducting a hearing on Offender Gleaves, Lee, DOC 144620 EHU # 310 in the production office when I noticed an attached witness statement from Offender Gomez, Fabian DOC # 190590 from EHU 309. In the statement Offender Gomez claims that the cell phone found in cell EHU 309/310 is his and does not belong to Offender Gleaves.

(ECF 7-1.) Mr. Gomez's statement read as follows:

---

[1] The court notes that Mr. Gomez was granted until January 6, 2020, to file a traverse in support of his petition, and was cautioned that if he failed to do so, the case would proceed to a decision without a traverse. (ECF 9.) The deadline has long passed and no traverse has been filed.

> On September 19, 2018, sometime after midnight, E-squad shook down my cell. During their inspection they recovered a cell phone, which was found under my cell mates pillow. Prior to E-squad conducting the search, I heard the officer working the booth, instructing the dorm sanitation crew to lockdown. To me this was out of the normal routine. Shortly after that, my cell mate, Lee Gleaves, jumped from his bed [to] use the restroom. While he was urinating with his back to me, I slid my cell phone under his pillow. I then got into my bunk and rolled over and acted asleep. Lt. Morgan, Sgt. Dice, and Sgt. Heisman ran in the cell cuffed me and my cellmate and started to search our room shortly after. Sgt. Heisman and Sgt. Dice came out and asked my cellmate where was the charger to the phone. My cellmate then answered that he didn't know because it was not his. Then they asked me, and I told them that it was my phone. They walked off and told Sgt. Workman that the charger was still in there and that he need it to finish the cell inspection and find the charger. Sgt. Workman started searching and I called him over to where we were sitting, and I told him that I will make his job easy. I told him that I had already told E-squad that the phone was mine and he could find the charger in the back of my TV. I ask for DHB to call Sgt. Workman as a witness and he will verify this statement. The[y] clearly wrote up the wrong person.

(ECF 7-2) (errors in original). Photos of the phone were taken, and a notice of confiscation of property was completed. (ECF 7-3; ECF 7-4; ECF 7-5.)

Mr. Gomez was formally notified of the charge on November 3, 2018. (ECF 7-6.) He pled not guilty and requested a lay advocate, and one was appointed for him. (*Id.*; ECF 7-7) He also requested a witness statement from Sergeant Workman "to say that he recovered a charger at the back of the t.v." (ECF 7-6.)

Thereafter, the hearing was postponed three times. (ECF 7-8; ECF 7-9; ECF 7-10.) On December 6, 2018, the hearing officer conducted a hearing on the charge. (ECF 7-11.) Mr. Gomez admitted the phone was his, but pled not guilty and stated that he "should have received a write up during the E-squad cell searches." (*Id.*) Based on staff reports, the photos, and the oral and written statements of Mr. Gomez admitting that the phone

2

was his, the hearing officer found him guilty. (*Id.*) He lost 100 days of earned-time credits, in addition to other sanctions. (*Id.*) Mr. Gomez's administrative appeals were denied. (ECF 7-12; ECF 7-13; ECF 7-14.)

When prisoners lose earned-time credits in a disciplinary proceeding, the Fourteenth Amendment Due Process Clause guarantees them certain procedural protections: (1) at least 24 hours advance written notice of the charge; (2) an opportunity to be heard before an impartial decision-maker; (3) an opportunity to call witnesses and present documentary evidence when consistent with institutional safety and correctional goals; and (4) a written statement by the fact-finder of evidence relied on and the reasons for the disciplinary action. *Wolff v. McDonnell*, 418 U.S. 539 (1974). To satisfy due process, there must also be "some evidence" to support the hearing officer's decision. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985).

Mr. Gomez raises two claims in his petition, which are essentially different iterations of the same claim: that the IDOC Adult Disciplinary Code was not followed because he did not receive the conduct report within 24 hours of the underlying incident. (ECF 1 at 2.) However, the violation of internal prison policies does not present a cognizable basis for granting federal habeas relief. *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991); *see also Keller v. Donahue*, 271 F. App'x 531, 532 (7th Cir. 2008) (inmate's claim that prison failed to follow internal policies had "no bearing on his right to due process"). The Due Process Clause entitled Mr. Gomez to at least 24 hours advance written notice of the charge, *Wolff*, 418 U.S. at 564, but the record reflects that he received considerably more than that. He was formally notified of the charge on

3

November 3, 2018, and the hearing was held on December 6, 2018. (ECF 7-6; ECF 7-11.)

Therefore, he has not established a due process violation.[2]

    For these reasons, the court:

(1) DENIES the habeas corpus petition (ECF 1);

(2) DIRECTS the clerk to enter judgment in this case.

SO ORDERED on August 5, 2020

                                                      /s/JON E. DEGUILIO
                                                    CHIEF JUDGE
                                                    UNITED STATES DISTRICT COURT

---

[2] The court notes that it is not clear from the record whether a witness statement was ever obtained from Sergeant Workman, but Mr. Gomez does not assert any claim about the statement. Furthermore, a prisoner is only entitled to evidence that was exculpatory, *Rasheed-Bey v. Duckworth*, 969 F.2d 357, 361 (7th Cir. 1992), and the denial of evidence will be considered harmless unless the evidence would have aided the inmate's defense. *Piggie v. Cotton*, 344 F.3d 674, 677 (7th Cir. 2003). "Exculpatory" in this context means evidence that "directly undermines the reliability of the evidence in the record pointing to [the prisoner's] guilt." *Meeks v. McBride*, 81 F.3d 717, 720 (7th Cir. 1996). A statement from Sergeant Workman that he found the phone charger where Mr. Gomez told him he put it would have further bolstered the reliability of Mr. Gomez's confession, and thus would have been inculpatory, rather than exculpatory.